HARMEET K. DHILLON
Assistant Attorney General

Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Telephone: (202) 304-8447
barry.arrington@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA
*Additional counsel listed on following page*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

UNITED STATES OF AMERICA,

Plaintiff,

v.

CITY OF SAN JOSE, CALIFORNIA, and SAN JOSE POLICE DEPARTMENT,

Defendants.

Case No. _____________

**COMPLAINT**

R. JONAS GEISSLER
Deputy Assistant Attorney General

BARRY K. ARRINGTON (TX No. 24129555)
Chief, Second Amendment Section

PATRICK TODD (TX No. 24106513)
TRISTAN SILVA II (DC No. 90037513)
Trial Attorneys

Second Amendment Section
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Telephone: (202) 304-8447

Todd Blanche
Attorney General

CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748
Craig.Missakian@usdoj.gov

Attorneys for Plaintiff

UNITED STATES OF AMERICA

Plaintiff, the United States of America submits the following Complaint against Defendants City of San Jose, California (City) and San Jose Police Department (SJPD).

**INTRODUCTION**

1. The Second Amendment guarantees that the pre-existing "right to keep and bear arms shall not be infringed." U.S. Const. amend. II. *See District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) ("[I]t has always been widely understood that the Second Amendment . . . codified a *pre-existing* right.") (emphasis in original). In *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010), the Supreme Court held that this right is among those fundamental rights necessary to our system of ordered liberty. While *Heller* dealt with the ability to *keep* arms in the home for self-defense, *N. Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) resolved whether the "plain text of the Second Amendment protects . . . carrying handguns publicly for self-defense." 597 U.S. at 32. The Court had "little difficulty" concluding that the "definition of 'bear' naturally encompasses public carry." *Id.*

2. This year, with respect to public carry, the Second Circuit emphasized "our Nation's long history of protecting the 'general right to public carry arms for self-defense' under the Second Amendment." *Christian v. James*, 176 F.4th 189, 201 (2d Cir. 2026) (quoting *Bruen*, 597 U.S. at 31). There, the court focused on how the challenged provision "could dramatically curtail an individual's practical ability to be prepared in public to defend themselves—'the *central component* of the Second Amendment right'" *Id*. (first quotation and alteration omitted) (emphasis in original) (quoting *Heller*, 554 U.S. at 599).

3. In *Bruen*, the Supreme Court held that "may-issue" licensing schemes violated the Second Amendment because the there is no tradition of "broadly prohibiting public carry of commonly used firearms for self-defense" nor a tradition of "limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Bruen*, 597 U.S. at 38. The Court blessed shall-issue schemes because their "narrow, objective, and definite standards" did "not necessarily prevent 'law-abiding, responsible citizens' from exercising" Second

Amendment rights. *Id.* at 38 n. 9. Yet, the Court immediately cautioned against "regimes where . . . exorbitant fees deny ordinary citizens their right to public carry." *Id.*

4. Defendants' permitting scheme is exactly that. In June, the San Jose City Council increased the license fee to $1,591. *See* San Jose, Cal., Res. No. 2026-183 (2026), § 11.[1] California Penal Code section 26190(b)(1) allows localities to charge "an additional fee" for the "reasonable costs for processing" new concealed carry licenses. The new price point reflects a nearly $300 increase in just two-and-a-half years since the City's last increase. Luke McCoy, *It Now Costs $1,591 Just to Apply for a Carry Permit in San Jose, and That's Before Training*, SA Carry, July 6, 2026.[2]

5. By way of comparison, across the Bay, San Francisco charges only $144 for the same fee. *San Francisco Police Department CA Online Concealed Carry Weapon License Application*, San Francisco Police Department, https://sanfranciscopd.permitium.com/ccw/start [https://perma.cc/9XLN-WAVZ] (last visited July 29, 2026). Although still high, none of Defendants' neighbors come close to charging the nearly $1,600 application fee that Defendants do. In Berkeley, it costs $255 to apply, and $325 more once approved. *Berkeley Police Department CA Online Carry Concealed Weapon Permit Application*, Berkeley Police Department, https://berkeleypdca.permitium.com/ccw/start [https://perma.cc/4DWR-ANKL] (last visited July 29, 2026); Santa Clara charges $488 up front and $488 at issuance. *Santa Clara County Sheriff's Office Online Concealed Carry Weapon License Application*, Santa Clara County Sheriff's Office, https://scso.permitium.com/ccw/start [https://perma.cc/5HNQ-872P] (last visited July 29, 2026); and Alameda County charges $347 and $346 for the same. *Alameda County Sheriff's Office Online Concealed Weapon Permit Application*, Alameda County Sheriff's

---

1 Available at https://sanjoseca.govnita.com/api/workspace/Resolutions/files/2287617059259/view, https://perma.cc/YN84-N4VA.

2 Available at https://www.usacarry.com/it-now-costs-1591-just-to-apply-for-a-carry-permit-in-san-jose-and-thats-before-training/, https://perma.cc/875D-Q8JR.

Office, https://alamedaca.permitium.com/ccw/start [https://perma.cc/5VUR-PRQ5] (last visited July 29, 2026).[3]

6. Other major cities across the country charge a pittance relative to San Jose. The Nation's Capital, for example, charges $75 to apply for a concealed carry permit. *Fees & Payment*, Metropolitan Police Department, https://mpdc.dc.gov/node/1799816 [https://perma.cc/QA6J-DXQF] (last visited July 29, 2026). New York City's three-year license costs $340. *New Application Instructions*, New York Police Department, https://licensing.nypdonline.org/new-app-instruction/ [https://perma.cc/966S-DTUV] (last visited July 29, 2026). Boston charges $100. *Apply For A License To Carry*, Boston Police Department, https://police.boston.gov/apply-for-a-license-to-carry/ [https://perma.cc/A6S3-D8ST] (last visited July 29, 2026). Chicago: $150. *Frequently Asked Questions*, State of Illinois Firearms Services, https://www.ispfsb.com/Public/Faq.aspx [https://perma.cc/LS25-VR98] (last visited July 29, 2026). Philadelphia: $20. *Philadelphia Police Department's Online License to Carry Firearms Permit Director*, Philadelphia Police Department, https://philadelphiapa.permitium.com/ccw/start [https://perma.cc/6PH5-J2DQ] (last visited July 29, 2026). San Jose is a national outlier when it comes to burdening the exercise of fundamental rights. Its fees are abusive and violate the Second Amendment.

7. The City's law enforcement officers are charged with enforcing its abusive licensing scheme and are doing so. Such law enforcement misconduct is unlawful and, therefore, subject to injunction pursuant to 34 U.S.C. § 12601(a) (Section 12601). The United States brings this action to vindicate the constitutional rights of the law-abiding citizens of San Jose.

**PARTIES**

8. Plaintiff is the United States of America.

9. The City is a municipal corporation within the County of Santa Clara, California.

10. SJPD is a law enforcement agency within the City.

---

[3] The United States does not concede that any of these other city's fees are constitutional, but presents them as a comparison to San Jose's clearly unconstitutional fees.

## JURISDICTION AND VENUE

11. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(3), and 1345.

12. The United States is authorized to initiate this action against Defendants and seek equitable relief under the Violent Crime Control and Law Enforcement Act of 1994, 34 U.S.C. § 12601(b).

13. Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)(1)–(2) because all Defendants are located in and carry out their operations primarily in the Northern District of California, and the events or omissions giving rise to this claim, including the processing of applications for licenses to carry a firearm, occurred within the same.

## GENERAL ALLEGATIONS

### I. Standard of Review.

14. In *Bruen*, the Supreme Court set forth the following test for evaluating Second Amendment claims:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

597 U.S. at 24.

15. In *Wolford v. Lopez*, 146 S. Ct. 2032 (2026), the Court clarified step one of the *Bruen* test:

> [The analysis required in a Second Amendment case] involves two steps. First, a court must determine whether the law before it clashes with the plain text of the Amendment's language. This inquiry entails three subsidiary questions. First, does the law apply to the people—which is to say, to all members of the political community? Second, does it concern any form of Arms, i.e., any weapon customarily used for offensive or defensive purposes? Third, does the law place any restrictions on either the keeping (i.e., possession) or the bearing (i.e., carrying) of arms?
>
> If a challenged law falls within the plain text of the Second Amendment, *it is presumptively unconstitutional*—which means that it may violate the preexisting

> right that the Amendment codified. But because that right was not in every way coterminous with the Amendment's literal language, further analysis may be needed. Specifically, the relevant government—federal, state, or local may be able to show that its challenged law did not infringe the historical understanding of the codified right.

146 S. Ct. at 2043-44 (cleaned up; citations and quotation marks omitted; emphasis added).

16. Thus, step one of the *Bruen* test requires this Court to ask three questions:

A. Does the law apply to the people?

B. Does it concern any form of arms?

C. Does the law place any restrictions on either the possession or carrying of arms?

17. In this case, step one of the *Bruen* test is easily met. No one can reasonably dispute that: (1) the individuals who are subject to the burdens of the City's licensing scheme are among "the people;" (2) the licensing scheme applies to arms; and (3) the licensing scheme restricts the possession or carrying of arms.

18. Thus, "when the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, it bears the burden to justify its regulation." *United States v. Rahimi*, 602 U.S. 680, 691 (2024).

## II. San Jose's Abusive Carrying Scheme.

### A. Regulatory Background.

19. California state law places several restrictions on how Californians may exercise their right to public carry. *See* Cal. Pen. Code §§ 25300–26406. Baseline requirements include (1) being at least 21 years old; (2) completing an approved training course; (3) designating a firearm "for which the license will be issued"; and (4) not being a "disqualified person," such as a felon, drug abuser, or subject to a restraining order. *See* §§ 26155 (enumerating requirements), 26202 (listing disqualified persons).

20. If an applicant satisfies the above requirements, then he or she may apply to the municipal police department of the city in which he or she lives, and the police department "shall issue" the license accordingly. § 26155(a), (a)(3).

21. State law also requires applicants to pay an application fee that is "determined by the [California] Department of Justice." § 26190. The statute prohibits the California Department of Justice from assessing fees beyond "the application processing costs." *Id.* at (a)(1).

22. Likewise, the statute requires licensing authorities to "charge an additional fee in an amount equal to the *reasonable costs for processing the application* for a new license." *Id.* at (b)(1) (emphasis added).

23. Defendants' municipal code is largely deferential to state law on regulating public carry. *See* S.J. Mun. Code Chapter 10.32 n. 6.[4] Except, however, Defendants tie additional financial strings to the right to keep and bear arms. *See, e.g. id.* at §§ 10.32.200, 10.32.210. ("Liability Insurance Requirement and Gun Harm Reduction Fee"); *Carrying a Concealed Weapon Policy*, at 4 (acknowledging "[a]dditional fees are required for fingerprinting, psychological testing, and training, in addition to the application fee.").

24. In June, Defendants set the license to carry concealed weapon application fee to $1,591. San Jose, Cal., Res. No. 2026–183 (2026). Up front, an initial applicant must only pay 20% of the total—$318. *Id.* The remaining balance—$1,273—is due when the license is issued. *Id.* Defendants' resolution does not attempt to justify this cost.

25. Beyond financial barriers, Defendants also subject applicants to psychological testing to determine whether an applicant is worthy of exercising his or her Second Amendment rights. Defendants, of course, lay the cost of this evaluation at the applicant's feet. *San Jose Police Department Carrying a Concealed Weapon Policy* at 5. The psychological testing requirement is SJPD's policy. California state law does not require such testing. *See* Cal. Penal § 26190(e). Nor is the testing requirement found in San Jose's municipal code. *See generally* S.J. Mun. Code Ch. 10.

**B. San Jose's License Requirements Are Presumptively Unconstitutional.**

26. The Second Amendment protects the right of law-abiding citizens to bear arms in public for lawful purposes such as self-defense. *Bruen*, 597 U.S. at 9-10; *Wolford*, 146 S. Ct. at

---

[4] Available at https://perma.cc/P5JU-QGP7.

2040. The only way the citizens of San Jose can exercise that right is to obtain a concealed carry license from Defendants.

27. Defendants' licensing fee and testing requirements meet *Wolford's* three questions to determine that the Second Amendment's plain text covers the conduct.

A. Does the law apply to the people? Yes, no one can reasonably dispute that the citizens of San Jose subject to the fee and testing are among the people.

B. Does it concern any form of arms? Yes. This licensing scheme is concerned exclusively with carrying concealed firearms.

C. Does the law place any restrictions on either the possession or carrying of arms? Yes, the fee must be paid and test obtained before a resident may carry a firearm.

28. The license fee is presumptively unconstitutional.

**C. Defendants Cannot Overcome the Presumption of Unconstitutionality.**

29. Ordinarily, "shall-issue licensing regimes" are constitutional because reasonable fees designed to cover administrative costs "do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry." *Bruen*, 597 U.S. at 38 n. 9 (quoting *Heller*, 554 U.S. at 635)). Rather, they ensure that licensees "are, in fact, 'law-abiding, responsible citizens.'" *Id*. Here, however, there is no plausible claim that San Jose's punitive $1,591 fee accords with the nation's firearm regulatory tradition. In *Wolford*, the Court held that Hawaii's statute made it impractical if not impossible for the average citizen to exercise their right to keep and bear ams. *Wolford*, 146 S.Ct. at 2047–49. That, of course, was the purpose of the statute and it worked as intended. Here, San Jose's exorbitant licensing fee has the same overall purpose—i.e., making it impractical for middle class citizens and impossible for low-income citizens to exercise their Second Amendment rights. Defendants add insult to injury with psychological testing and attendant costs. The Policy does not give applicants notice of how much the testing costs. Rather, the Policy delegates the test's cost's determination to an "authorized psychologist" and dictates that the applicant pay as much money as the psychologist

charges. As it stands, applicants have no way to tell whether this Policy or "authorized psychologist" follows state law, limiting the "amount charged to the applicant for the psychological assessment" to "the reasonable costs [incurred by] the licensing authority." Cal. Penal § 26190(e)(1). Astoundingly, Defendants condition the exercise of citizens' constitutional rights on their ability and willingness to pay a fee to a mental health worker who is under no obligation to either perform the test or charge a reasonable fee.

30. The Supreme Court has repeatedly reminded us that the Second Amendment is equal to every other constitutional right. *Bruen*, 597 U.S. at 71 (quoting *McDonald*, 561 U.S. at 780) ("The constitutional right to bear arms in public for self-defense is not a 'second-class right, subject to an entirely different body of rules than the other Bill of Rights guarantees.'"); *Wolford*, 146 S.Ct. at 2050 n. 13 (recounting disapproved property laws that violated other constitutional rights; "The right protected by the Second Amendment is entitled to no less protection than other constitutional rights."). *Bruen* indicated that governments are permitted to charge licensing fees so long as they are not abusive. A fee designed to make it impossible for anyone but the wealthiest among us to exercise their constitutional rights is the very epitome of abusive.

31. Charging a prohibitive fee would be unthinkable in other constitutional contexts. Examples from the First Amendment context abound. *See Minneapolis Star & Tribune Co. v. Minn. Com'r of Rev.*, 460 U.S. 575, 582, 585 (1983) ("A tax that burdens rights protected by the First Amendment cannot stand unless the burden is necessary to achieve an overriding governmental interest"; "A power to tax differentially, as opposed to a power to tax generally, gives a government a powerful weapon against the taxpayer selected"); *Murdock v. Com. of Penn.*, 319 U.S. 105, 112–13 (1943); *Grosjean v. Am. Press Co.*, 297 U.S. 233, 245–50 (1936) (recounting the Founders' and Framers' antipathy for taxes on the press). "A state may not impose a charge for the enjoyment of a right granted by the federal constitution." *Murdock*, 297 U.S. at 113.

**III. The United States Is Authorized to Bring this Action under Section 12601.**

32. As pertinent to this action, 34 U.S.C. § 12601(a) ("Section 12601(a)") states:

> It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers . . . that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

33. The City of San Jose is a municipal corporation within the County of Santa Clara, California. *See* San Jose City Charter, art. I, § 100. It is a governmental authority within the meaning of 34 U.S.C. § 12601(a).

34. SJPD is established by the city charter. S.J. City Charter art. VIII, § 807. SJPD is a law enforcement agency and is the law enforcement arm of Defendant City of San Jose. The SJPD Chief of Police implements "a written process for the application and issuance of" licenses to carry a firearm. Permits Unit, *San Jose Police Department Carrying a Concealed Weapon Policy*, San Jose Police Department, at 2 (March 2024) (last visited July 29, 2026).[5] When the SJPD enforces the application fee, it engages in a pattern or practice of conduct by law enforcement officers that deprives persons of rights held under the Constitution, violating section 12601(a).

35. The SJPD webpage listing permit fees is called the San Jose Police Department "Permit Fees" schedule. *See* https://www.sjpd.org/records/fees/permit-fees. Additionally, the statute regarding fees states: "The licensing authority of any city . . . shall charge an additional" processing fee and then "shall transmit the fee to the city." Penal Code § 26190(b)(1), (3). SJPD is the licensing authority for San Jose. On information and belief, SJPD charges the unconstitutionally exorbitant permit fee.

36. As set forth above, these ordinances have been enforced in a manner that violates the Second Amendment. SJPD implements the ordinance as both its pattern and practice of conduct. Accordingly, there is a pattern or practice of conduct by the Defendants that deprives

[5] Available at https://www.sjpd.org/about-us/organization/chief-executive-officer/permits-unit/ccw-policy-procedures#docaccess-622f1e813aa937b784eeb70c83bf9488e16bc6606e7fea8ac1f53f88161d58ce, https://perma.cc/C4JD-884Q.

persons of rights, privileges, or immunities secured or protected by the Constitution. Therefore, Defendants are in violation of 34 U.S.C. § 12601(a).

37. 34 U.S.C. § 12601(b) states,

> Whenever the Attorney General has reasonable cause to believe that a violation of paragraph 1[6] has occurred, the Attorney General, for or in the name of the United States, may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice.

38. The United States brings this action under the authority granted by section 12601(b) to remedy Defendants' violation of section 12601(a).

**FIRST CLAIM FOR RELIEF**
**(Violation of 34 U.S.C. § 12601(a))**
**(Second Amendment)**

39. Plaintiff incorporates and realleges all of the allegations set forth in the previous paragraphs.

40. Defendants engaged in a pattern or practice of conduct by law enforcement officers that deprived persons of rights secured and protected by the Constitution, in violation of 32 U.S.C. § 12601(a) by enforcing the laws in the manner described herein.

41. Unless this Court enjoins Defendants and also grants the declaratory relief the United States describes below, Defendants will continue to engage in the pattern or practice of conduct that deprives law-abiding individuals of their Second Amendment rights.

**PRAYER FOR RELIEF**

WHEREFORE, the United States hereby prays that the Court grant the following relief:

A. Entry of a declaratory judgment under 28 U.S.C. § 2201(b), declaring that:

(1) San Jose is a "governmental authority" as Section 12601(a) uses that term;

(2) Officers of the SJPD are "law enforcement officers" as Section 12601(a) uses that term;

(3) When the SJPD enforces the municipal regulations described herein, they are acting as agents of (or otherwise acting on behalf of) the City;

[6] [*sic*] This should say "paragraph (a)."

(4) When the law enforcement officers of the SJDP enforce the municipal regulations in the manner described above, they engage in a pattern or practice of conduct by law enforcement officers; and

(5) The effect of that pattern or practice of conduct is to deprive the citizens of San Jose of their rights guaranteed by the Second and Fourteenth Amendments.

B. Entry of permanent injunctive relief under Federal Rule of Civil Procedure 65, enjoining Defendants and their agents from charging abusive licensing fees, including an order that:

(1) Defendants and their agents and employees refrain from engaging in any of the predicate acts forming the basis of the pattern or practice of unlawful conduct described herein;

(2) Defendants and their agents and employees adopt and implement policies and procedures to remedy the pattern or practice of unlawful conduct described herein; and

(3) Defendants adopt systems that identify and correct conduct that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

C. Such other and additional relief as the interests of justice may require.

Respectfully submitted this ____ day of August 2026.

*/s/ Barry K. Arrington*
Barry Arrington
Chief Second Amendment Section

*/s/ Craig H. Missakian*
Craig H. Missakian
United States Attorney