HARMEET K. DHILLON
Assistant Attorney General

Civil Rights Division
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Telephone: (202) 304-8447
barry.arrington@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA
*Additional counsel listed on following page*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF SAN JOSE, CALIFORNIA,<br><br>Defendant. | Case No. 5:2026-cv-10508-PCP<br><br>**FIRST AMENDED COMPLAINT** |

R. JONAS GEISSLER
Deputy Assistant Attorney General

BARRY K. ARRINGTON (TX No. 24129555)
Chief, Second Amendment Section

PATRICK TODD (TX No. 24106513)
TRISTAN SILVA II (DC No. 90037513)
Trial Attorneys

Second Amendment Section
United States Department of Justice
950 Pennsylvania Avenue, NW
Washington, D.C. 20530
Telephone: (202) 304-8447

Todd Blanche
Attorney General

CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

450 Golden Gate Avenue, Box 36055
San Francisco, California 94102-3495
Telephone: (415) 436-7200
Fax: (415) 436-6748
Craig.Missakian@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

Pursuant to Fed. R. Civ. P. 15(a)(1)(A), Plaintiff submits the following First Amended Complaint against Defendant City of San Jose, California (City).

**INTRODUCTION**

1. The Second Amendment guarantees that the pre-existing "right to keep and bear arms shall not be infringed." U.S. Const. amend. II. *See District of Columbia v. Heller*, 554 U.S. 570, 592 (2008) ("[I]t has always been widely understood that the Second Amendment . . . codified a *pre-existing* right."). In *McDonald v. City of Chicago*, 561 U.S. 742, 778 (2010), the Supreme Court held that this right is "among those fundamental rights necessary to our system of ordered liberty." While *Heller* dealt with the ability to *keep* arms in the home for self-defense, *N. Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022) resolved "whether the plain text of the Second Amendment protects . . . carrying handguns publicly for self-defense." 597 U.S. at 32. The Court had "little difficulty concluding" that the "definition of 'bear' naturally encompasses public carry." *Id.*

2. This year, with respect to public carry, the Second Circuit emphasized "our Nation's long history of protecting the 'general right to public carry arms for self-defense' under the Second Amendment." *Christian v. James*, 176 F.4th 189, 201 (2d Cir. 2026) (quoting *Bruen*, 597 U.S. at 31). There, the court focused on how the challenged provision "could dramatically curtail an individual's practical ability to be prepared in public to defend themselves—'the *central component* of the Second Amendment right'" *Id*. (first quotation and alteration omitted) (quoting *Heller*, 554 U.S. at 599).

3. In *Bruen*, the Supreme Court held that "may-issue" licensing schemes violated the Second Amendment because there is no tradition of "broadly prohibiting the public carry of commonly used firearms for self-defense" nor a tradition of "limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense." *Bruen*, 597 U.S. at 38. The Court held shall-issue schemes may be constitutional if they have "narrow, objective, and definite standards" that do "not

necessarily prevent 'law-abiding, responsible citizens' from exercising" Second Amendment rights. *Id.* at 38 n.9. Yet, the Court immediately cautioned against "regimes where . . . exorbitant fees deny ordinary citizens their right to public carry." *Id.*

4. Defendant's permitting scheme is exactly that. In June, the San Jose City Council increased the license's total application fee to $1,591. *See* S.J., Cal., Res. No. 2026-183 (2026), § 11.[1] California Penal Code section 26190(b)(1) allows localities to charge "an additional fee" for the "reasonable costs for processing" new concealed carry license applications. The new price point reflects a nearly $300 increase in just two-and-a-half years since the City's last increase. Luke McCoy, *It Now Costs $1,591 Just to Apply for a Carry Permit in San Jose, and That's Before Training*, USA Carry (July 6, 2026), https://www.usacarry.com/it-now-costs-1591-just-to-apply-for-a-carry-permit-in-san-jose-and-thats-before-training/, https://perma.cc/875D-Q8JR.

5. By way of comparison, across the Bay, San Francisco charges only $144 for the same fee. *San Francisco Police Department CA Online Concealed Carry Weapon License Application*, S.F. Police Dep't, https://sanfranciscopd.permitium.com/ccw/start [https://perma.cc/9XLN-WAVZ] (last visited July 29, 2026). Although still high, none of Defendant's neighbors come close to charging the nearly $1,600 application fee that Defendant does. In Berkeley, it costs $255 to apply, and $325 more once approved. *Berkeley Police Department CA Online Carry Concealed Weapon Permit Application*, Berkeley Police Dep't, https://berkeleypdca.permitium.com/ccw/start [https://perma.cc/4DWR-ANKL] (last visited July 29, 2026); Santa Clara charges $488 up front and $488 at issuance. *Santa Clara Cnty. Sheriff's Office Online Concealed Carry Weapon License Application*, Santa Clara County Sheriff's Off., https://scso.permitium.com/ccw/start [https://perma.cc/5HNQ-872P] (last visited July 29, 2026); and Alameda County charges $347 and $346 for the same. *Alameda County*

[1] Available at https://sanjoseca.govnita.com/api/workspace/Resolutions/files/2287617059259/view, https://perma.cc/YN84-N4VA.

*Sheriff's Office Online Concealed Weapon Permit Application*, Alameda Cnty. Sheriff's Off., https://alamedaca.permitium.com/ccw/start [https://perma.cc/5VUR-PRQ5] (last visited July 29, 2026).[2]

6. Other major cities across the country charge a pittance relative to San Jose. The Nation's Capital, for example, charges $75 to apply for a concealed carry permit. *Fees & Payment*, Metro. Police Dep't, https://mpdc.dc.gov/node/1799816 [https://perma.cc/QA6J-DXQF] (last visited July 29, 2026). New York City's three-year license costs $340. *New Application Instructions*, N.Y.C. Police Dep't, https://licensing.nypdonline.org/new-app-instruction/ [https://perma.cc/966S-DTUV] (last visited July 29, 2026). Boston charges $100. *Apply For A License To Carry*, Boston Police Department, https://police.boston.gov/apply-for-a-license-to-carry/ [https://perma.cc/A6S3-D8ST] (last visited July 29, 2026). Chicago: $150. *Frequently Asked Questions*, State of Ill. Firearms Services, https://www.ispfsb.com/Public/Faq.aspx [https://perma.cc/LS25-VR98] (last visited July 29, 2026). Philadelphia: $20. *Philadelphia Police Department's Online License to Carry Firearms Permit Director*, Phila. Police Dep't, https://philadelphiapa.permitium.com/ccw/start [https://perma.cc/6PH5-J2DQ] (last visited July 29, 2026). San Jose is an extreme national outlier when it comes to burdening the exercise of fundamental rights. Its fees are abusive and violate the Second Amendment.

7. The San Jose Police Department (SJPD) is charged with enforcing the City's abusive licensing scheme and is doing so. Such law enforcement misconduct deprives individuals of their Second Amendment right and, therefore, is subject to injunction pursuant to 34 U.S.C. § 12601(a) (Section 12601). The United States brings this action to vindicate the constitutional rights of the law-abiding citizens of San Jose.

---

[2] The United States does not concede that any of these other city's fees are constitutional, but presents them as a comparison to San Jose's clearly unconstitutional fees.

## PARTIES

8. Plaintiff is the United States of America.

9. The City is a municipal corporation within the County of Santa Clara, California.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action under 28 U.S.C. §§ 1331, 1343(a)(3), and 1345.

11. The United States is authorized to initiate this action against Defendant and seek equitable relief under the Violent Crime Control and Law Enforcement Act of 1994, 34 U.S.C. § 12601(b).

12. Venue is proper in the Northern District of California under 28 U.S.C. § 1391(b)(1)–(2) because Defendant is located in and carry out its operations primarily in the Northern District of California, and the events or omissions giving rise to this claim, including the processing of applications for licenses to carry a firearm, occurred within the same.

## GENERAL ALLEGATIONS

### I. Standard of Review.

13. In *Bruen*, the Supreme Court set forth the following test for evaluating Second Amendment claims:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation.

597 U.S. at 24.

14. In *Wolford v. Lopez*, 609 U.S. 185 (2026), the Court clarified step one of the *Bruen* test:

> [The analysis required in a Second Amendment case] involves two steps. First, a court must determine whether the law before it clashes with the plain text of the Amendment's language. This inquiry entails three subsidiary

> questions. First, does the law apply to the people—which is to say, to all members of the political community? Second, does it concern any form of Arms, i.e., any weapon customarily used for offensive or defensive purposes? Third, does the law place any restrictions on either the keeping (i.e., possession) or the bearing (i.e., carrying) of arms?
>
> If a challenged law falls within the plain text of the Second Amendment, *it is presumptively unconstitutional*—which means that it may violate the preexisting right that the Amendment codified. But because that right was not in every way coterminous with the Amendment's literal language, further analysis may be needed. Specifically, the relevant government—federal, state, or local may be able to show that its challenged law did not infringe the historical understanding of the codified right.

609 U.S. at 195-96 (internal citations and marks omitted) (emphasis added) (cleaned up).

15. Thus, step one of the *Bruen* test requires this Court to ask three questions:

A. Does the law apply to the people?

B. Does it concern any form of arms?

C. Does the law place any restrictions on either the possession or carrying of arms?

16. In this case, step one of the *Bruen* test is easily met. No one can reasonably dispute that: (1) the individuals who are subject to the burdens of the City's licensing scheme are among "the people;" (2) the licensing scheme applies to arms; and (3) the licensing scheme restricts the possession or carrying of arms.

17. Thus, "when the Government regulates arms-bearing conduct, as when the Government regulates other constitutional rights, it bears the burden to 'justify its regulation.'" *United States v. Rahimi*, 602 U.S. 680, 691 (2024) (quoting *Bruen*, 597 U.S. at 24).

## II. San Jose's Abusive Licensing Scheme.

### A. Abusive Fees.

18. California state law places several restrictions on how Californians may exercise their right to public carry. *See* Cal. Pen. Code §§ 25300–26406. Baseline requirements include (1) being at least 21 years old; (2) completing an approved training course; (3) designating a firearm "for which the license will be issued"; and (4) not being a "disqualified person," such as a felon, drug abuser, or subject to a restraining order. *See* §§ 26155 (enumerating requirements), 26202 (listing disqualified persons).

19. If an applicant satisfies the above requirements, then he or she may apply to the municipal police department of the city in which he or she lives, and the police department "shall issue" the license accordingly. § 26155(a).

20. State law also requires applicants to pay an application fee that is "determined by the [California] Department of Justice." § 26190(a)(1). The statute prohibits the California Department of Justice from assessing fees beyond "the application processing costs." *Id.*

21. Likewise, the statute requires licensing authorities to "charge an additional fee in an amount equal to the *reasonable costs for processing the application* for a new license…." *Id.* at (b)(1) (emphasis added).

22. Defendant's municipal code is largely deferential to state law regarding regulation of public carry. *See* S.J. Mun. Code ch. 10.32 n.6.[3] Except, however, Defendant ties additional financial strings to the right to keep and bear arms. *See, e.g. id.* at §§ 10.32.200, 10.32.210 ("Liability Insurance Requirement and Gun Harm Reduction Fee"); *Carrying a Concealed Weapon Policy*, S.J. Police Dep't, 4 (March 2024), https://www.sjpd.org/home/showpublisheddocument/760/638454998116700000

[3] Available at https://perma.cc/P5JU-QGP7.

(acknowledging "[a]dditional fees are required for fingerprinting, psychological testing, and training, in addition to the application fee.").[4]

23. In June, Defendant set the license to carry concealed weapon application fee to $1,591. S.J., Cal., Res. No. 2026–183 § 11 (2026). Up front, an initial applicant must only pay 20% of the total—$318. *Id.* The remaining balance—$1,273—is due when the license is issued. *Id.* Defendant's resolution does not attempt to justify this cost.

**B. Abusive Psychological Testing Requirement.**

24. Beyond financial barriers, Defendant also subjects applicants to psychological testing to determine whether an applicant is worthy of exercising his or her Second Amendment rights. Defendant, of course, lays the cost of this evaluation at the applicant's feet. *Carrying a Concealed Weapon Policy*, *supra,* at 5. The psychological testing requirement is set forth in a SJPD policy. California state law does not require such testing. *See* Cal. Penal § 26190(e)(1). Nor is the testing requirement in San Jose's municipal code. *See generally* S.J. Mun. Code ch. 10.32.

25. While there is a history and tradition of disarming people who have been shown to have mental illness, that history is not analogous to preemptively screening everyone for a vague and unspecified psychological condition that makes them unsuitable to carry a firearm.

**C. Insurance Requirement.**

26. San Jose requires anyone who owns or possesses a firearm to maintain an insurance policy that covers "losses or damages resulting from any accidental use of the firearm, including but not limited to death, injury or property damage." *See* S.J. Mun. Code § 10.32.210. The same ordinance requires firearm owners or possessors to pay "an Annual Gun Harm Reduction Fee to the Designated Nonprofit Organization each year." *Id.* at § 10.32.215.

---

[4] Available at https://perma.cc/XS6S-BGMF.

27. This Court upheld these regulations in *Nat'l Ass'n for Gun Rts., Inc. v. City of San Jose*, 2023 WL 4552284 (N.D. Cal. July 13, 2023), *aff'd in part, vacated in part sub nom. Howard Jarvis Taxpayers Ass'n v. City of San Jose*, 2024 WL 4249728 (9th Cir. Sept. 20, 2024).[5] There, the Court held that the insurance requirement does not implicate the Second Amendment's plain text. *Id.* at *6, *8. The Court's holding in in that case since has been abrogated by *Wolford*. Plaintiff brings this action to have the Court reconsider its holding. To the extent the Court continues to believe the ordinance does not implicate the plain text of the Second Amendment, Plaintiff brings this action seeking further appellate review for the reasons set forth in *Koons v. Att'y Gen. New Jersey*, 156 F.4th 210, 245 (3d Cir.), *as amended* (Sept. 17, 2025), *reh'g en banc granted, opinion vacated*, 162 F.4th 100 (3d Cir. 2025).

**D. San Jose's License Requirements Are Presumptively Unconstitutional.**

28. The Second Amendment protects the right of law-abiding citizens to keep and bear arms for lawful purposes such as self-defense. *Bruen*, 597 U.S. at 9-10; *Wolford*, 609 U.S. at 190. The only way the citizens of San Jose can exercise that right is to obtain a concealed carry license from Defendant and comply with the insurance ordinance.

29. These burdens meet *Wolford's* three questions to determine that the Second Amendment's plain text covers the conduct.

A. Does the law apply to the people? Yes, no one can reasonably dispute that the citizens of San Jose subject to these burdens are among the people.

B. Does it concern any form of arms? Yes. The burdens concern the keeping and bearing of firearms in the City.

C. Does the law place any restrictions on either the possession or carrying of arms? Yes, a resident must obtain the insurance and a license before keeping or bearing a firearm.

30. The burdens described above are presumptively unconstitutional.

[5] The Ninth Circuit's decision is not precedential. *Id.*

### E. Defendant Cannot Overcome the Presumption of Unconstitutionality.

31. Ordinarily, "shall-issue licensing regimes" are constitutional because reasonable fees designed to cover administrative costs "do not necessarily prevent 'law-abiding, responsible citizens' from exercising their Second Amendment right to public carry." *Bruen*, 597 U.S. at 38 n. 9 (quoting *Heller*, 554 U.S. at 635)). Rather, they ensure that licensees "are, in fact, 'law-abiding, responsible citizens.'" *Id*. Here, however, there is no plausible claim that San Jose's punitive $1,591 fee accords with the nation's firearm regulatory tradition. In *Wolford*, the Court explained how Hawaii's statute made it impermissibly impractical, if not impossible, for the average citizen to exercise their right to keep and bear ams. *Wolford*, 609 U.S. at 202-204. That, of course, was the purpose of the statute and it worked as intended. Here, San Jose's exorbitant licensing fee has the same overall purpose—i.e., making it impractical for middle-class citizens and impossible for low-income citizens to exercise their Second Amendment rights.

32. In addition, there is no historical tradition analogous to the City's mandatory psychological testing requirement. While there is a tradition of disarming people who have been shown to have mental illness, that history is not analogous to preemptively screening everyone for vague and unspecified psychological problems that may render them unfit for carrying a firearm. In *United States v. Rahimi*, 602 U.S. 680 (2024), the Supreme Court approved disarming individuals who are "found by a court to present a threat to others" because the provision was relevantly similar to "surety and going armed laws." *Id*., 602 U.S. at 698. Unlike the statute at issue in that case, here, Defendant's policy is not relevantly similar to the surety laws. The psychological testing requirement applies to everyone. It is not limited to persons "threatening to do harm." *See Bruen*, 597 U.S. at 55. The government unilaterally imposes and assesses the testing requirement. Unlike the surety laws, no court reviews the City's assessment of whether a person is unfit.

33. Similarly, the surety statutes are not analogous to the City's insurance requirement. The temporal scope of the burden imposed by the surety statutes is far more

limited than that imposed by the insurance mandate, which requires perpetual maintenance of liability insurance. *See Koons*, 156 F.4th at 245; *Bruen*, 597 U.S. at 55–57 (once a judicial determination of dangerousness was no longer in effect, the surety statute's restriction was lifted); *Rahimi*, 602 U.S. at 699.

**III. The United States Is Authorized to Bring this Action under Section 12601.**

34. As pertinent to this action, 34 U.S.C. § 12601(a) (Section 12601(a)) states:

> It shall be unlawful for any governmental authority, or any agent thereof, or any person acting on behalf of a governmental authority, to engage in a pattern or practice of conduct by law enforcement officers . . . that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

35. The City of San Jose is a municipal corporation within the County of Santa Clara, California. *See* S.J. City Charter, art. I, § 100. It is a governmental authority within the meaning of 34 U.S.C. § 12601(a).

36. SJPD is established by the city charter. S.J. City Charter art. VIII, § 807(a). SJPD is a law enforcement agency and is the law enforcement arm of Defendant City of San Jose. The SJPD Chief of Police implements "a written process for the application and issuance of" licenses to carry a firearm. Permits Unit, *Carrying a Concealed Weapon Policy*, *supra* ¶ 22 at 2. When the SJPD enforces the burdens described above, it engages in a pattern or practice of conduct by law enforcement officers that deprives persons of rights held under the Constitution, violating section 12601(a).

37. The SJPD webpage listing permit fees is called the San Jose Police Department "Permit Fees" schedule. *See* https://www.sjpd.org/records/fees/permit-fees.[6] Additionally, the state statute regarding fees states: "The licensing authority of any city . . . shall charge an additional" processing fee and then "shall transmit the fee to the city." Penal Code § 26190(b)(1). SJPD is the licensing authority for San Jose. SJPD charges the unconstitutionally exorbitant permit fee.

[6] Available at https://perma.cc/6HEV-WXCN.

38. As set forth above, Defendant has enforced these ordinances in a manner that violates the Second Amendment. SJPD implements the ordinances as both its pattern and practice of conduct. Accordingly, there is a pattern or practice of conduct by the Defendant that deprives persons of rights, privileges, or immunities secured or protected by the Constitution. Therefore, Defendant is in violation of 34 U.S.C. § 12601(a).

39. 34 U.S.C. § 12601(b) states,

> Whenever the Attorney General has reasonable cause to believe that a violation of paragraph (1)[7] has occurred, the Attorney General, for or in the name of the United States, may in a civil action obtain appropriate equitable and declaratory relief to eliminate the pattern or practice.

40. The United States brings this action under the authority granted by section 12601(b) to remedy Defendant's violation of section 12601(a).

**FIRST CLAIM FOR RELIEF**
**(Violation of 34 U.S.C. § 12601(a))**
**(Second Amendment)**

41. Plaintiff incorporates and realleges all of the allegations set forth in the previous paragraphs.

42. Defendant engaged in a pattern or practice of conduct by law enforcement officers that deprived persons of rights secured or protected by the Constitution, in violation of 32 U.S.C. § 12601(a) by enforcing the laws in the manner described herein.

43. Unless this Court enjoins Defendant and also grants the declaratory relief the United States describes below, Defendant will continue to engage in the pattern or practice of conduct that deprives law-abiding individuals of their Second Amendment rights.

**PRAYER FOR RELIEF**

WHEREFORE, the United States hereby prays that the Court grant the following relief:

[7] [*sic*] This should say "paragraph (a)."

A. Entry of a declaratory judgment under 28 U.S.C. § 2201(b), declaring that:

   (1) San Jose is a "governmental authority" as Section 12601(a) uses that term;

   (2) Officers of SJPD are "law enforcement officers" as Section 12601(a) uses that term;

   (3) When SJPD enforces the municipal regulations described herein, they are acting as agents of (or otherwise acting on behalf of) the City;

   (4) When the law enforcement officers of SJDP enforce the municipal regulations in the manner described above, they engage in a pattern or practice of conduct by law enforcement officers; and

   (5) The effect of that pattern or practice of conduct is to deprive the citizens of San Jose of their rights guaranteed by the Second and Fourteenth Amendments.

B. Entry of permanent injunctive relief under Federal Rule of Civil Procedure 65, enjoining Defendant and its agents and employees from the unlawful conduct described above, including an order that:

   (1) Defendant and its agents and employees refrain from engaging in any of the predicate acts forming the basis of the pattern or practice of unlawful conduct described herein;

   (2) Defendant and their agents and employees adopt and implement policies and procedures to remedy the pattern or practice of unlawful conduct described herein; and

   (3) Defendant adopt systems that identify and correct conduct that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States.

C. Such other and additional relief as the interests of justice may require.

Respectfully submitted this 29th day of September 2026.

*/s/ Barry K. Arrington*
Barry Arrington
Chief, Second Amendment Section